UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIM NO.: 25-CR-344 (ADA) |
| | § | |
| TIMOTHY LEIWEKE | § | |

### MOTION FOR CONTINUANCE OF DECEMBER 1 TRIAL

On October 3, the government filed a motion for pretrial dates for a December trial and told us that it opposes a continuance. Mr. Leiweke now moves for a continuance. Because the government opposes, this motion goes into detail about the discovery and other issues that warrant a continuance. As set out below, the government investigated this case for over two years; discovery is voluminous (about 7,000,000 pages so far); the case raises complex legal and factual issues; and the defense needs more time to review discovery and prepare for trial.

### 1. The Indictment

This indictment says that two companies – OVG and Legends – agreed to rig a bid to develop the Moody Center in Austin for the University of Texas. We say that is not true; that OVG won the contract by competition, not collusion, and provided a world-class arena at excellent terms for the University.

1

The indictment was returned in July 2025. On August 5, Mr. Leiweke filed an unopposed motion to continue the trial indefinitely and to set a status conference. Doc. 24. The Court found the case complex; set a status hearing for November 12; and set trial for December 1. Doc. 26.

## 2. Discovery So Far

Around August 13, the government produced 6,934,204 pages of discovery (about 1,000,000 documents). Around September 15, it produced an additional 18,548 pages of discovery. The government is preparing a third production as early as today.

It takes time to load each production into a database, and our review is just beginning. We also are working productively with the government to iron out several "kinks" in the discovery to help facilitate our review. For example, many government witness interviews reference documents that the witness reviewed and discussed during the interview. It is important to see those documents to understand the interview. However, for many witnesses, the documents are neither attached to the interview report nor identified in a way to find them in the discovery haystack. We have raised this with the government, and the government has agreed upon request to send us the documents for particular witnesses (or help us find them in the 6.9+ million pages). This is just one example of many where we are working with the government to locate and access relevant materials.

Regarding *Brady,* we have asked the government not only to produce evidence that is "favorable" to the defense but also to identify it as such, lest it get lost in the haystack. The government has told us that it will *produce* Brady material, but it will not *identify* any material as such. In any event, because it can be difficult for the government to know what the defense would consider favorable, on September 29, we sent the government a "discovery letter" identifying areas that we think would be favorable to the defense, to assist in its *Brady* review. The government has told us that it will respond in writing. Once we have the government's response to our discovery letter, we will know if there are disputed items that we need to bring to the Court.

On September 30, we filed a request for 404(b) evidence that we had shared with the government earlier. The government says it will respond in writing.

In sum: discovery is voluminous and ongoing, and the defense needs more time to review it – and time to follow leads; identify and talk to witnesses; and (if needed) subpoena third parties for documents that are necessary for the defense but not previously obtained/produced by the government.

There is no way to accomplish this – and file motions and prepare for trial – on the schedule proposed by the government.

### 3. No Prejudice to Government

In opposing a continuance, the government tells us it is "ready for trial." It should be: it investigated this case for over two years and then decided when to bring an indictment. However, the Speedy Trial Act provides continuances to allow *the defense* to prepare. Typically, criminal antitrust cases are complex and can take well over a year to reach trial. *See e.g. United States v. Evans Concrete and Gregory Melton,* No. 20-cr-81 (S.D. Ga.) (**200 weeks from indictment to trial**); *United States v. Lopez*, No. 23-cr-55 (D. Nev.) (**105 weeks to trial**); *United States v. Harwin,* No. 20-cr-115 (M.D. Fla.) (**102 weeks to trial**); *United States v. Aiyer*, No. 18-cr-333 (S.D. NY) (**76 weeks to trial**); *United States v Lischewski*, No. 18-cr-203 (N.D. Cal.) (**75 weeks to trial**); *United States v. Briscoe, et al*, No. 24-cr-314 (W.D. Okla.) (**74 weeks to trial**); *United States v. Penn, et al*; No. 20-cr-152 (D. Colo.) (**72 weeks to trial**); *United States v. O'Brien, et* al, No. 22-cr-130 (M.D. Fla.) (**71 weeks to trial**); *United States v. Jindal, et* al, No. 20-cr-358 (E.D. Tex.) (**68 weeks to trial**); United *States v. Patel*, No. 21-cr-220 (D. Conn.) (**71 weeks to trial**); *United States v. Brewbaker*, No. 20-cr-481 (E.D. N.C.) (**65 weeks to trial**); *United States v. Dornsbach, et al*, No. 22-cr-48 (D. Minn.) (**59 weeks to trial**); *United States v. Manahe, et al*, No. 22-cr-13 (D. Maine) (**57 weeks to trial**); *but see United States v. Thiry*, No. 21-cr-229 (D. Colo.) (**38 weeks to trial** – but the defense counsel did not move for more).

As with other criminal antitrust matters, the facts and law in this case are complex, a continuance is appropriate, and the government has no legitimate interest in opposing one. Simply put, the government will not be prejudiced by allowing the defense time to prepare.[1]

### 4. Complex Legal and Factual Issues

Although we have just started our review, the discovery already shows that this case involves important and complex legal and factual issues. This is a motion for continuance, not a motion to dismiss, but we include a brief discussion here of some of those issues.

In this case, OVG put together a group of companies to build and operate the Moody Center Arena. At the time, OVG could not itself provide all the services needed to build and operate the arena, so it had to put together a team. Legends was not an arena developer but wanted to provide certain services to the arena such as food and beverage concession stands.[2]

---

[1] The only thing we know that has happened for the government to change its position and oppose a continuance is because we filed sealed motion (Doc. 31) and supporting expert declarations (Doc. 40) (still pending). That sealed motion is no reason to *deny* a continuance. If anything, that motion *supports* a continuance to investigate the matter revealed therein.

[2] As a threshold matter, the "per se" rule typically applies only to agreements in restraint of trade between "competitors." The indictment alleges that Legends and OVG were "competitors" during 2017-18. We are finding evidence that they were *not*. For example, even Legends has told DOJ that it was not in the arena development business during the relevant time. In any event, we need time to review the discovery on this point and, if necessary, issue subpoenas to third parties once we determine what is not included in the discovery.

As Shervin Mirhashemi – Legends' then-CEO and alleged "co-conspirator 1" – explained to the government in interviews:

> Legends was attempting to attach their services to the team with the best chance of winning the bid.

and

> [W]hen Legends found out that Live Nation and OVG were teaming up to place a bid, it knew it represented a serious proposal and would likely be the winning team.

Mr. Mirhashemi then described his supposed "conspiracy" this way to the grand jury:

> A. The agreement that we had come to [was] that Legends would support the development-led bid for this project by OVG in lieu or supporting and providing services for another developer's bid.
>
> …
>
> Q. [The] agreement was for Legends to bid with OVG and not bid against Oak View Group?
>
> A. It would be to bid with and support their bid in lieu of supporting another developer's bid, yes.

According to the government, Mr. Mirhashemi's agreement was a *per se* illegal "restraint of trade." In other words, according to the government, an arena developer may not agree that its "teammates" or subcontractors will support *its* team and not join another "team" to bid against it: that is an unlawful "restraint."

Our research shows that theory is wrong on the law, and courts have rejected such "literal" readings of the Sherman Act as "overly simplistic." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1052 (9th Cir. 1983). Only *unreasonable* restraints on trade are illegal: many restraints can be reasonable and even pro-competitive given the relevant market and business needs. Most restraints of trade are analyzed under a "rule of reason" that examines whether they can be pro-competitive for business in question. By contrast, only a "small group" of restraints, typically "horizontal" restraints "between competitors," are so inherently anti-competitive, without any redeeming value, that they are "*per se*" illegal – and the Supreme Court has repeatedly rejected efforts to expand that "small group." *Ohio v. American Express Co.*, 585 U.S. 529, 540-41 (2018) (citation omitted).

*Notably, teaming arrangements like the one described by Mr. Mirhashemi are not within the "small group" of "per se" antitrust violations*. Thus, in *Northrop*, despite allegations to the contrary, it was not a "per se" violation for Northrop and McDonnell Douglass to team up to build a plane for the military and divide up the market – one selling a land-based variant and the other an aircraft carrier variant. Although literally a "restraint," such teaming "actually foster[ed] competition by allowing both parties to compete.". 705 F.2d at 1052-53.

Moreover, and importantly, the teaming arrangement that Mr. Mirhashemi describes is a *"vertical"* agreement, where Legends would supply services to an

7

OVG-led team, and *such vertical agreements are not "per se" illegal.* *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 885, 902 (2007); *Abadir & Co. v. First Miss. Corp.*, 651 F.2d 422 (5th Cir. 1981). This point was recently confirmed in a Fourth Circuit case, *United States v. Brewbaker*, 87 F.4th 563, 569-70 (4th Cir. 2023) – which reversed a conviction after the government tried to overextend the *per se* rule. In *Brewbaker*, "horizontal" competitors allegedly submitted rigged bids on aluminum installations, but the losing bidder had a contract to supply the winner with the materials needed for the job – a "vertical" supplier-buyer relationship. The court held that the alleged restraint "was both horizontal *and* vertical" and such a "hybrid" restraint does not trigger "*per se*" treatment. *Id.* at 576-80.

And, Legends itself has told DOJ that its teaming with OVG in Austin was "appropriate," "legitimate," and "lawful." In 2024, Legends asked the DOJ Antitrust Division to approve its acquisition of a company called ASM. In DOJ's review of that acquisition, Legends represented – and DOJ considered -- whether its teaming with OVG in Austin was legal. On June 25, 2024, Legends' counsel wrote to the Antitrust Division:

> **Teaming for the UT Project was lawful from Legends' point of view.** Financing, developing, constructing, and managing a large sports venue like the UT arena is a major undertaking, which no company could accomplish alone. Teaming is an established and appropriate business practice in the industry. At the time, Legends and OVG had complementary capabilities that could be combined to create a more attractive proposal for UT. Teaming arrangements similar to this have been recognized as legitimate and lawful under a rule of reason analysis.

Letter from Legends outside counsel to C. Kelley (DOJ), June 25, 2024, found in initial discovery at DOJATR-TL-0947646-52 at 3. The government did not identify this letter as "*Brady*," but we think it is, and we will be pursuing the evidence supporting the letter.

We have just scratched the surface, and we need time to review the discovery, identify witnesses, pursue leads, issue subpoenas to third parties if necessary … and prepare for trial.

### 5. Additional Considerations

**Trial Conflict:** Mr. Leiweke's counsel David Gerger is set for a multi-defendant jury trial in a federal criminal case in Dallas starting February 23, 2026, which the government predicts will last 7 weeks. (*United States v. Mortazavi,* N. D. Tex. No. 3:24-CR-49-S) (representing defendant Jorge Cuza).

*Mortazavi* was indicted in February 2024, and the press of other trials is a recognized basis for the length of a continuance. *See, e.g., United States v. Henry*, 984 F.3d 1343, 1353-54 (9th Cir. 2021) (Rosenthal, C.J., S.D. Tex., sitting by designation) (rejecting Speedy Trial

appeal: "each continuance was supported by detailed information about the complexity of the case and the need for additional time to prepare a defense, particularly because the defense lawyers had a number of conflicting trial commitments.").

**6.**

Finally, Mr. Leiweke is on bond and complying with his conditions of release.

**Request for Continuance**

For all these reasons, the ends of justice served by a continuance outweigh the interests of the parties or the public in a December 1 trial, and a continuance also is needed for defense preparation.

At this time, we request a continuance of nine months from December 1.

Respectfully submitted,

*/s/ David Gerger*

David Gerger
Texas Bar No. 07816360
dgerger@ghmfirm.com
GERGER HENNESSY
MARTIN & PETERSON LLP
700 Louisiana, Suite 2300
Houston, Texas 77002
713.224.4400 – Telephone
713.224.5153 – Fax

**ATTORNEYS FOR TIMOTHY LEIWEKE**

## CERTIFICATE OF CONFERENCE AND SERVICE

The government opposes a continuance.

This pleading was filed electronically with the Court, serving all parties.

*/s/ David Gerger*
David Gerger